UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 12-10264-RGS

UNITED STATES OF AMERICA

v.

DANNY VELOZ

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS AN EXTRAJUDICIAL IDENTIFICATION

April 20, 2017

STEARNS, D.J.

The facts underlying this narrowly tailored motion to suppress an out-of-court identification are straightforward and not in dispute. The identifying witness, Jean-Pierre Saliba, is the owner of a used car lot in Haverhill, Massachusetts, previously located in Derry, New Hampshire. Saliba was interviewed on September 7, 2016, by an agent of the FBI regarding a $3,800 sale in July of 2012 in Derry of a used Cadillac to a person the FBI believed to have been defendant Danny Veloz. Saliba recalled that he had been introduced to a man named "Danny" a year or so before the July 2012 sale by a woman named Jeanny Betances. At that first meeting, Betances and "Danny" paid $10,000 in cash for a BMW utility vehicle without any haggling. Saliba described "Danny" as a "light-skinned Hispanic male." Saliba also volunteered that sometime after the sale of the Cadillac he had begun an affair with Betances, although he had eventually broken off

with her when things became "complicated."[1] The agent then showed Saliba an array of 10 photographs of mostly fair-skinned young Hispanic males (One of which depicted Veloz). Saliba stated that he did not recognize any of the individuals in the photos, but identified one photo (not Veloz's) as picturing a man with a complexion similar to "Danny's."

After some discussion of the existence of records confirming the vehicle sales, Saliba further described "Danny" as having a scar on his lip and "a sport's body." The agent then urged Saliba to take another look at the array. On the second attempt, Saliba selected Veloz's photo, stating that he was 80 percent certain that this was the "Danny" he had met (mainly because of his eyes), although the photo differed in several features from the "Danny" that he remembered (who was skinnier, lighter-skinned, and did not have an "elongated" head).

On October 13, 2016, Saliba met again with the agent, this time at the FBI offices in Lowell. Saliba informed the agent that he had, after the first interview, applied for a job with the FBI as a contract interpreter. He also offered the recollection of a tiger tattoo that "Danny" had worn on his arm or hand. When shown a photograph of Veloz's tattooed arm, he was unable to confirm that it in fact depicted the tiger tattoo that he had described. He was then shown a second array of 10 mug shots of young Hispanic men. This

---

[1] According to Saliba, Betances and Veloz were married when Saliba initiated the romance with Betances.

2

time, he immediately selected the same photo of Veloz that he had eventually chosen (with 80 percent confidence) at the September showing.

DISCUSSION

As the government points out, the court has previously, *see* Dkt. #396, in connection with contested photo identifications made of Veloz by cooperating conspirators, explained that due process considerations have little, if any, bearing in cases where the identifying witness is literally a defendant's "partner in crime." This is because the "prior familiarity exception" serves as the guarantor of reliability. *See, e.g., United States v. Mears*, 614 F.2d 1175, 1177 (8th Cir. 1980). Here, however, I cannot say that the exception applies. As the interview notes with Saliba make clear, his acquaintance with Veloz (if indeed it was Veloz) consisted of singular meetings four and five years earlier over the sale of two cars during which Veloz never spoke (because of his limited English).[2] There is no evidence in the record that Saliba had any kind of continuing relationship with Veloz in the four years that ensued, hence he could hardly be regarded as one of Veloz's familiars. Moreover, Saliba had good reasons to curry favor with the FBI, both because of his desire to be employed by the Bureau as a contract interpreter and possibly out of concern for his own safety given his initiation of an affair with Veloz's wife while Veloz was in prison. More to the point,

---

[2] I note that these sales took place at a presumably busy commercial used car lot, and were not private sales in which it would be more likely that a seller would remember the purchaser.

however, is the fact that Saliba was unable to identify Veloz's photo in the first array (and in fact pointed initially to the picture of another man) and only tentatively selected the photo of Veloz when encouraged to "take another look." At the October meeting, despite claiming to have remembered a tiger tattoo, he was unable to identify it in a photo of Veloz's arm. And while he chose the same photo of Veloz that he had eventually selected in the September showing from a new array, as best I can determine, Veloz's photo is the only one to appear in both the September and October arrays.[3]

The relevant law can be succinctly stated. Suggestiveness that leads to "a very substantial likelihood of irreparable misidentification" is the due process defect that federal law seeks to avert. *Neil v. Biggers*, 409 U.S. 188, 198 (1972), quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968). Under the test confirmed in *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977), "reliability is the linchpin in determining the admissibility of identification testimony." While "suggestive" confrontations are discouraged, they are not subject to a *per se* rule of exclusion. See *Perry v. New Hampshire*, 565 U.S. 228, 244 (2012) ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do.") Rather, the issue is whether, in the totality of the circumstances, the suggestive identification is nevertheless reliable. Under the *Brathwaite* test, the defendant must

---

[3] The two arrays are part of the record on the motion to suppress, *see* Dkt. #754, #758.

establish by a preponderance of the evidence that the identification procedure was suggestive. If the defendant meets that burden, the government is then required to show by clear and convincing evidence that the identification's reliability outweighs any suggestive taint. *State v. Cefalo*, 396 A.2d 233, 238-239 (Me. 1979). Reliability is a function of the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of any prior description; (4) the level of certainty of the witness; and (5) the time elapsed between the crime and the confrontation. *Neil v. Biggers, supra,* at 199-200.

Applying these factors, I cannot say with any confidence that the clear and convincing evidence standard has been met in this case. Consequently, I will exclude at trial both the out-of-court and any in-court identification of Veloz by Saliba. This Order does not preclude the government from calling Saliba for the purpose of establishing that the cash sales of the vehicles in fact occurred if independent evidence can be adduced to confirm that Veloz indeed was the purchaser.

## ORDER

For the foregoing reasons, the motion to suppress is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE