UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 12-10264-RGS |
| | ) | |
| 4.   DANNY VELOZ, | ) | |
|     a/k/a "Maestro," | ) | |
|     Defendant | ) | |

<u>GOVERNMENT'S MOTION TO PRECLUDE DEFENSE WITNESSES BEING OFFERED
ON IRRELEVANT AND COLLATERAL ISSUES</u>

The government's revised witness and exhibit list, filed on June 11, 2017, is in keeping with the Court's March 27, 2017 pre-trial order advising the parties that each side had twenty hours for direct and cross-examination. By contrast, on or about June 5, 2017, the defendant filed so-called <u>Touhy</u> requests for over twenty law enforcement agents, Task Force Agents, and analysts. Monday evening, the defendant filed a witness list comprised of 64 witnesses, including federal witnesses subject to <u>Touhy</u> requests and 23 additional law enforcement officers.[1]

With the exception of FBI Special Agents John Orlando and Kathryn Earle and DEA Special Agent Michael O'Shaughnessy (all

---

[1] There is ample reason to believe that the defense's witness list is not a serious effort to identify likely witnesses. The defendant's list included defense counsel's law partner (19) and paralegal (35); Peter Levitt, an Assistant U.S. Attorney previously assigned to the case (50); Joseph Nicholls, a computer forensic expert who to date has not produced any reports of examinations of evidence in this case (28); and Katie Turpin (32), Guzman's wife. Before the last trial date, the Court held a hearing – at which defense counsel did not appear – and found that Turpin had a valid 5th Amendment privilege.

of whom had significant involvement in the investigation and apprehension of Veloz), the government objects to the defendant calling any of the remaining federal witnesses (identified below by <u>Touhy</u> letter and number on defense witness list). The (minimal) information set forth in the defendant's <u>Touhy</u> letters simply serves to illustrate that these witnesses will be called to offer irrelevant testimony on collateral matters. The government objects to the defense's plan to call 23 other local law enforcement officers for the same reasons.

<u>Kenneth Casper (36), April Haddock (3), Fabiola Lageman (10), Karen McKinnon (33), Travis Ostrem (54), Jeffrey Rolands (20), Krista Toole (39)</u>. As noted in the government's trial brief, Special Agent Sarah DeLair was the team leader on the FBI's Evidence Response Team (ERT) for the July 24, 2012 search of 890 Clay Street and for the July 25, 2012 search of Veloz's apartment at 443 Andover Street. The government intends to introduce the relevant evidence from both searches through DeLair, who is listed on the government's witness list, and who was either present for the recovery of the evidence or worked with other members of her team to document the location where the evidence was seized. Veloz was not present for either search. The defense apparently seeks to call every member of the Evidence Response Team present for these searches. Many of these agents are no longer assigned to the Boston office (Haddock –

Detroit, Rolands – Washington D.C., Toole – Cleveland). The motion to suppress the fruits of this search was already denied, as was the motion for reconsideration.

<u>Jocelyn Carlson (21), Joshua Friedman (29), Karen Lowe (34)</u>. The government's witnesses do not allege that Veloz participated in Amparo's kidnapping – rather, that he coordinated and supervised it from afar. The government is not alleging that Veloz can be linked to the offense through trace evidence. These witnesses are therefore irrelevant.[2]

<u>Ashley Cox (63)</u>. The government had not yet received a <u>Touhy</u> letter for Cox. The only report the government has identified that references Cox indicated that she signed a form transferring evidence from the search of Matos's house at 19 Tyler Street on September 12, 2012 from Lawrence Police to FBI custody.

<u>Keith Weidlich (58)</u>. The defense requested Special Agent Weidlich's testimony because he searched Veloz's car (no evidence was recovered from the search) and because he conducted

---

[2] On the same grounds, the Court should preclude John Costa (22), Massachusetts State Police, who linked a palm print of Maldonado's to Amparo's maroon SUV (Maldonado will testify in the government's case in chief and admits to participating in the Amparo kidnapping); Howard McCollin (13), Lynn Police, who did not recover latent prints from the Lynn - Whiting Street kidnapping; and Jana Cante (16) and Jana Thomas (17), State Police Crime Lab, who examined the firearms seized from Morales and Rivera on Saratoga Street on May 9, 2012.

"interviews of some of the most critical witnesses in this case" and "thus he is necessary for the impeachment of critical witnesses." Even assuming that was permissible (see below), the defense attached reports of interviews with two neighborhood residents who state that 443 Andover Street (where Veloz lived) was a constant source of noise and problems and an interview report of Veloz's ex-wife Jeanny Betances who provided agents with a plain vanilla "I don't know why my husband is being questioned by police" statement.

    Mark Alford (44). The defense requested Special Agent Alford's testimony and supporting documentation because "[he] was one of the agents who interviewed a critical victim in the case" and he "received a firsthand account of the victim's abduction from the victim himself." Special Agent Alford interviewed Amparo and Castro hours after they were rescued. There is no dispute that a kidnapping happened in this case - several cooperating witnesses are going to testify that they kidnapped Amparo and Castro (and others) for Veloz. The defense also seeks to call Alford because he "also had interactions with a cooperating witness in this case, and can testify to the critical statements made by the cooperating witness, regarding the kidnapping that ended in Manchester." The defense proffers no explanation as to how Alford could testify to a "critical"

(unidentified) statement made by a cooperating witness (also unidentified).

Lawrence Travaglia (41). Travaglia was at 443 Andover Street on July 25, 2012 when Veloz was stopped and his apartment was searched. Travaglia remembers seeing GPS data displayed on the large TV screen in Veloz's apartment. The government advised the defendant that it asked the members of the FBI's evidence response team if they remember seeing this data displayed and they do not. The government does not intend to call Travaglia as a witness (even if he is called, this is inculpatory, not exculpatory, evidence).

Jean Druin (18) and John Maki (24). The defense requested Special Agent Druin because "he was involved in an investigation that is relevant to the kidnapping case. He can give testimony regarding GPS devices that were used, wiretaps, drug houses, drug distributors, and his investigations which are captured within his affidavit" (which details a separate drug investigation unrelated to the defendants in this case). The Touhy letter goes on to say that Druin "will be asked about Luis Reynoso, a cooperating witness in this case. Special Agent Druin can connect Reynoso to another kidnapping conspiracy group that is unrelated and is in fact a rival of Danny Veloz." Reynoso himself is going to testify to being connected to another group

5

of kidnappers but will identify committing the July 23, 2012 kidnapping of Amparo for Veloz.

The defense requested DEA Task Force Agent Maki because he was a local law enforcement contact familiar with Amparo's arrest on heroin trafficking charges in September 2016 (four years after the kidnapping that is the subject of this indictment). In its Touhy request, the defense advised that it wanted to call Maki because he can explain how "the kidnappers, who are now cooperating witnesses, apprehended the victim for their own purposes" and that Maki can testify that Veloz "was not part of a scheme to kidnap" Amparo. The defendant offers no explanation as to what this could possibly mean.[3]

That leaves the following local law enforcement or civilian witnesses:

- Angel Mejia (1), Carlos Cueva (6), John Heggarty (23), Jose Flores (27), William Colantuoni (55), Michael Mangan (62), Lawrence Police officers whose testimony will be cumulative of Brito's or of other agents or who were involved in kidnapping investigations that predate the instant case by two years;

---

[3]   The government reserves the right to object to the testimony of a federal employee witness, or to particular topics of testimony from a federal employee witness, pursuant to 28 C.F.R. §§ 16.21 - 16.28 (i.e., the Touhy regulations). See 28 C.F.R. § 16.26 (requiring no disclosure if, for example, the testimony would disclose classified information, reveal a confidential source or informant to which an investigative agency objects, or would disclose investigatory records that would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired).

6

- Ann O'Donahue (2), a state probation officer;

- Brian Olijey (4), a former Raymond New Hampshire police officer who told agents shortly after the kidnapping that Wallace was known to him as a drug dealer, something Wallace will testify to himself;

- Christopher Morales (7), currently serving 180 months in federal prison for possessing a loaded gun seized from him on Saratoga Street on May 9, 2012;

- Derek Cataldo (9), Ferdinand Cruz (11), Jamie Gallant (15), Kenneth Loui (37), Michael Bergeron (46), Patrick Maguire (49), Richard Nahan (51), Morgan Lovejoy (59), Brian Karoul (61), all of the Manchester, New Hampshire Police Department. The government does not allege that Veloz was present at Clay Street on July 23-24, 2012 and three cooperating witnesses will testify as to how officers apprehended them at Clay Street on July 24, 2012. As noted above, the government intends to call Manchester Detective Nick Georgoulis, who relayed Amparo's information about the kidnapping to other officers. The defense's decision to list nine other witnesses for this part of the case borders on harassment;

- Detective FNU Delano (57), who responded to a kidnapping in Methuen in August 2013 (over a year after Veloz was arrested);

- Mark Reid (45), a State Police trooper who conducted surveillance on various dates in 2012 and who was present for the consent search of Melvin Rivera's apartment on September 28, 2012 where he tossed two guns from his apartment;

- Kevin Bibeau (38), a State Police trooper who in 2010 arrested Christopher Morales for possessing a gun that was later suppressed in state court;

- Heather O'Donnell (12), rented the white van used by the Veloz kidnap team to kidnap Amparo), Julie Maldonado (30) (Maldonado's wife), Manuel Amparo (43) (victim), and Jose Daniel Felipe Castro (26) (victim) – to put it charitably, it appears unlikely that these witnesses will testify.

7

That leaves the witnesses listed in footnote 1 and David Prum (8), Joseph Nicholls (28), Lisa Stevens-Goodnight (42), Olga Galkina (48), and Sean Burke (53), a defense investigator. The government has been advised that these individuals were employed at various times by members of the defense team.

Neither the United States Constitution nor the Federal Rules of Evidence permit a defendant to call witnesses to testify regarding facts which are not of consequence to the case. Fed. R. Evid. 401; United States v. Snow, 670 F.2d 749, 752 (7th Cir. 1981). Evidence which is not relevant is not admissible. Fed. R. Evid. 402; United States v. Flemmi, 402 F.3d 79, 86 (1st Cir. 2005).

Moreover, even if certain defense witness testimony is marginally relevant, it should be excluded when it will confuse the issues, mislead the jury, and waste time. Fed. R. Evid. 403; United States v. St. Pierre, 599 F.3d 19, 23 (1st Cir. 2010) (Rule 403 was properly applied and evidence excluded where proposed evidence had a potential to confuse and mislead the jury); United States v. Hatch, 514 F.3d 145, 157 (1st Cir. 2008) (District court properly rejected further testimony by the defendant because it was irrelevant, would simply confuse the jury, and might cause it to make unwarranted assumptions); United States v. Brown, 500 F.3d 48, 58 (1st Cir. 2007)

(District court did not abuse its discretion in excluding marginally relevant testimony which would raise a significant risk of confusing the issues).

Assuming arguendo that Rules 401, 402, and 403 do not bar the defendant's witnesses, the witnesses should be excluded under Fed. R. Evid 608(b) because they are being offered to give extrinsic evidence to impeach another witness on a collateral matter. United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993). Veloz is attempting to introduce testimony that would distract the jury from the main issues and add little practical value to the defense. The Court should accordingly use its discretion to exclude such an attempt to present extrinsic evidence on a collateral matter. Beauchamp, 986 F.2d at 4.

First Circuit case law clearly bars witness testimony offered simply to impeach the credibility of another witness. United States v. Perez-Perez, 72 F.3d 224, 227 (1st Cir. 1995) (finding the district court did not err in refusing to permit defense to offer witness testimony to impeach the credibility of a government witness based on extrinsic evidence); United States v. Gomes, 177 F.3d 76, 81 (1st Cir. 1999) ("Extrinsic evidence of specific bad acts is not admissible to show truthfulness (citing Fed. R. Evid. 608(b)) . . . or to contradict the witness on a collateral matter"). Similarly, in United States v. Thomas, the court affirmed the district court's refusal to allow

defense counsel to call a witness in order to show that a separate witness, a confidential informant, was lying.  467 F.3d 49, 56 (1st Cir. 2006).  Allowing defense witnesses to testify in an attempt to impeach the credibility of another witness would start a "trial within a trial" or a mini-trial based on a collateral matter.  Thomas, 467 F.3d at 56; United States v. Coplin, 463 F.3d 96, 104 (1st Cir. 2006).  Of course, as a matter of law under Fed. R. Evid. 701, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at trial.  United States v. Akitoye, 923 F.2d 221, 224 (1st Cir. 1991) (it is not the place of one witness to draw conclusions about, or cast aspersions upon, another witness' veracity).

Accordingly, the government respectfully requests that the Court limit the number of defense witnesses to those individuals who actually have relevant testimony to non-collateral issues in dispute at this trial.

                                      Respectfully submitted,

                                      WILLIAM D. WEINREB
                                      Acting United States Attorney

                              By:   /s/ Christopher Pohl
                                  Christopher Pohl
                                  Assistant U.S. Attorney

CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 14, 2017.

                                        /s/ Christopher Pohl
                                        Christopher Pohl
                                        Assistant U.S. Attorney