UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 12-10264-RGS

UNITED STATES OF AMERICA

v.

DANNY VELOZ

CONSOLIDATED MEMORANDUM AND ORDER
ON DEFENDANT'S MOTIONS TO DISMISS (Dkt #648 and #649)

July 27, 2017

STEARNS, D.J.

Before the court are two motions to dismiss, both alluding to claims of government misconduct. The first, which alleges the unwitting presentation of perjured testimony to the grand jury that returned the indictment against defendant Danny Veloz, is premised on the supposed "rule" of *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974). *Basurto* held that a defendant cannot be tried on an indictment tainted even partially by material perjured testimony. *Id.* at 785.

Veloz relies on the government's disclosure that two of its cooperating witnesses, Henry Maldonado and Jose Guzman, in being prepared for testimony at trial, admitted that they had lied, Maldonado in two instances, Guzman in one. The lies principally involved an attempt by the witnesses to coordinate their stories about their involvement (or non-involvement) in a

kidnapping that had taken place in Lynn, Massachusetts.[1]  That being the case, Veloz argues, the "focus is on whether the perjured testimony is material."  Dkt # 649, at 2.

It would be that straightforward were *Basurto* the law in the First Circuit.  But it is not.  "*Basurto* has been accorded mixed reviews, even by the court that decided it. . . .  For our part, we have declined to endorse *Basurto* . . . ."  *United States v. Mangual-Corchado*, 139 F.3d 34, 41 (1st Cir. 1998).  Rather, the First Circuit rule (as in most other Circuits) is that grand jury errors, if disclosed to the petit jury (as will certainly be the case here during cross-examination), are cured by the petit jury's verdict.  *United States v. Rivera-Santiago*, 872 F.2d 1073, 1088 (1st Cir. 1989).

Defendant's second motion objects to an alleged "spoliation" of three items of evidence and an alleged late disclosure of *Brady-Giglio* material.  The bulk of the motion (6 1/3 of 8 single-spaced pages) – alleging late disclosure – can be disposed of in *brevis* as defendant has already received the relief that he requested – a continuance of the trial to permit his counsel to more thoroughly prepare.[2]

---

[1]  Maldonado also admitted that it was he, and not Guzman, who had burned one victim with a hot iron.

[2]  Veloz implicitly concedes that his preferred remedy, dismissal as a sanction for the allegedly tardy disclosure, is one that courts are reluctant in almost any case to impose.  *See, e.g.*, *United States v. Lemmerer*, 277 F.3d

Evidence that is potentially exculpatory, either because it is recognized as such, or because a defendant has asked in good faith to inspect it, must be preserved. *See United States v. Bohl*, 25 F.3d 904, 913 (10th Cir. 1994) (despite early and persistent notice that its testing procedures were flawed, the government deliberately destroyed samples of allegedly defective steel without affording defendants the opportunity to conduct tests of their own). *Cf. United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) (due process requires preservation of *inculpatory* evidence that might have impeachment value at a suppression hearing). When potentially exculpatory evidence is lost or destroyed, a court must weigh the culpability of the prosecution, the materiality of the evidence, and the potential prejudice to the defendant. However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988).[3]

---

579, 587-588 (1st Cir. 2002); *United States v. Devin*, 918 F.2d 280, 289-290 (1st Cir. 1990).

[3] The test is more stringent, however, when the evidence is not merely potentially useful, but facially exculpatory. *See Olszewski v. Spencer*, 466 F.3d 47, 57-58 (1st Cir. 2006) (where lost evidence is shown to be both "apparently exculpatory" and "irreplaceable," a defendant is relieved of the burden of showing bad faith).

3

The three items that Veloz contends were "spoiled" are a cell phone and laptop that were returned to the wife of co-defendant Henry Maldonado after agents determined that the phone contained only matters personal to the wife, while the laptop was a children's toy. The third item is the physical SIM card that was inserted in a GPS device that defendants are alleged to have attached to the underside of a victim's car in order to track his movements. As to the cell phone and the laptop, Veloz has failed to meet his burden of articulating a plausible basis for believing that their inspection would yield anything of an exculpatory nature. *See Magraw v. Roden*, 743 F.3d 1, 8 (1st Cir. 2014).

With respect to the SIM card, the government points out, and the matter is not disputed, that before the card was lost, it was photographed during the disassembly of the GPS device and its data contents were downloaded and preserved. While Veloz argues that a re-inspection of the SIM card might enable him to challenge the accuracy of the "government's theory" (presumably as to the identity of the original card), the government notes that it plans to offer evidence that the serial number of the SIM card is unique to the GPS device and can be matched to the tracking records of the GPS website provider (which have been provided to Veloz). Because Veloz cannot show (as is his burden) that the SIM card, even if it has some

exculpatory value, is irreplaceable, he has suffered no prejudice.[4]  *See Olszewski*, 466 F.3d at 58.

### ORDER

For the foregoing reasons, the motions to dismiss are DENIED.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[4] Veloz does not allege that the government agents acted in bad faith. *See Magraw*, 743 F.3d at 7-8.