# United States Court of Appeals
## For the First Circuit

No. 17-2136

UNITED STATES OF AMERICA,

Appellee,

v.

DANNY VELOZ,

a/k/a MAESTRO, a/k/a JOIL RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Selya, and Boudin,
Circuit Judges.

Mark W. Shea, with whom Shea & LaRocque, LLP was on brief,
for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with
whom Andrew E. Lelling, United States Attorney, was on brief, for
appellee.

January 24, 2020

**BARRON**, **Circuit Judge**. Danny Veloz challenges on various grounds his 2017 conviction for conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c), for which he received a prison sentence of life. Finding no merit to his challenges, we affirm.

## I.

Veloz's conviction stems from his alleged role as the mastermind of a Massachusetts-based scheme to kidnap drug dealers and hold them for ransom. On July 23, 2012, a victim of the scheme, Manuel Amparo, alerted law enforcement that he had just escaped from having been kidnapped. Three men were initially arrested in connection with that crime, one of whom, Henry Maldonado, began cooperating with the authorities.

Maldonado informed the authorities that Veloz was the head of the kidnapping crew. Maldonado told them that Veloz would attach GPS devices to the cars of potential kidnapping victims in order to track their movements. Once Veloz learned a victim's typical driving routine, Maldonado also recounted, Veloz would instruct his crew to abduct the victim and hold the victim for ransom.

Further investigation revealed that Amparo had a GPS device unknowingly attached to his car. The Federal Bureau of Investigation ("FBI") then secured a warrant to search Veloz's residence from a United States magistrate judge. The search turned

up, among other things, computers and cell phones related to the scheme.

The operative indictment was handed up on September 27, 2012, by a grand jury in the District of Massachusetts. The indictment charged Veloz and six co-defendants with conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c). Veloz's co-defendants each pleaded guilty. Veloz chose to proceed to trial, which commenced on August 7, 2017. The jury returned a guilty verdict against Veloz on August 21, 2017, and the District Court sentenced Veloz to life in prison on November 17, 2017. That same day, Veloz timely filed a notice of appeal.

## II.

Veloz first challenges the District Court's denial of his motion to suppress the evidence that law enforcement authorities seized from his apartment. Veloz argues that the District Court erred in denying this motion because the application for the warrant that led to the seizure failed to establish the requisite probable cause.

When reviewing "the denial of a suppression motion, we assess the district court's factfinding for clear error, and review legal questions (such as probable cause . . . ) de novo." United States v. Ackies, 918 F.3d 190, 197 (1st Cir.), cert. denied, No. 19-6602, 2019 WL 6833480 (Dec. 16, 2019). We employ a "totality-of-the-circumstances analysis" to see if the government

established "a fair probability that contraband or evidence of a crime will be found in a particular place," Illinois v. Gates, 462 U.S. 213, 238 (1983), and "accord 'considerable deference to reasonable inferences [that] the [issuing judge] may have drawn from the attested facts,'" United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011) (alteration in original) (quoting United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996)).

Veloz's first ground for challenging the denial of his motion to suppress focuses on the affidavit that accompanied the application that FBI Special Agent John Orlando ("SA Orlando") submitted for the search warrant. The affidavit relied largely on information from a confidential informant. Veloz contends that, because the affidavit did not describe the informant as having provided credible information to law enforcement in the past, the warrant was not supported by probable cause. We disagree.

"[A]n informant's tip can establish probable cause even though the affidavit does not contain information about the informant's past reliability," United States v. Greenburg, 410 F.3d 63, 67 (1st Cir. 2005), as a "probable cause finding may be based on an informant's tip so long as the probability of a lying or inaccurate informer has been sufficiently reduced," id. at 69. "We apply a 'nonexhaustive list of factors' to examine the affidavit's probable cause showing" when it is based on a tip.

United States v. Gifford, 727 F.3d 92, 99 (1st Cir. 2013) (quoting

Tiem Trinh, 665 F.3d at 10). These factors include:

> (1) whether the affidavit establishes the
> probable veracity and basis of knowledge of
> persons supplying hearsay information; (2)
> whether an informant's statements reflect
> first-hand knowledge; (3) whether some or all
> of the informant's factual statements were
> corroborated wherever reasonable or
> practicable (e.g., through police
> surveillance); and (4) whether a law
> enforcement affiant assessed, from his
> professional standpoint, experience, and
> expertise, the probable significance of the
> informant's provided information.

Id.

In this case, the first two factors that we have set

forth above point in favor of finding the tip reliable. SA

Orlando's affidavit represented that the confidential informant

had provided a detailed description of the illegal scheme's

operations and Veloz's role in them. His affidavit also made clear

that the confidential informant's description of those operations

was based, in part, on his having been inside Veloz's residence.

The third factor further indicates that the tip in this

case was reliable because SA Orlando's affidavit identified a

number of key respects in which the informant's tip had been

corroborated. For example, his affidavit stated that the apartment

building that the informant had identified as Veloz's place of

residence had a mailbox in it with Veloz's name on it; that law

enforcement had observed a car parked in front of that residence -- a brown Cadillac -- that matched the description that the informant had previously given of Veloz's vehicle; and that FBI agents had observed a red van that belonged to one of Veloz's co-conspirators parked outside of that same apartment building. Moreover, an attachment to the warrant application stated that, in accord with the confidential informant's claim that Veloz had used GPS devices to monitor his victims, the investigation into the July 23, 2012, kidnapping revealed that a GPS device had been attached to the victim's car.

The fourth factor, which relates to the experience of the law enforcement officer seeking the warrant, reinforces the reliability of the tip here. SA Orlando represented in his affidavit that the information that he had obtained from the confidential informant accorded with what he had learned from investigating kidnappings in the nearby area over the course of the previous year. See Zayas-Diaz, 95 F.3d at 111 (explaining that a search warrant application is strengthened when "a law-enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise").

Finally, in this case, "the [informant] was known to the police and could be held responsible if his assertions proved inaccurate or false." United States v. Barnard, 299 F.3d 90, 93

(1st Cir. 2002) (citing <u>Florida</u> v. <u>J.L.</u>, 529 U.S. 266, 270 (2000)).
Thus, this fact provides further support for a finding that the
confidential informant's tip was reliable.  <u>Id.</u>

Veloz has a fallback argument in challenging the
District Court's denial of his motion to suppress.  He contends
that the District Court erred by mistakenly finding that SA
Orlando's affidavit stated that the informant "admitted to his
role in the kidnapping."  But, because the warrant application
establishes the reliability of the confidential informant's tip
whether or not the informant was himself involved in the kidnapping
scheme, we may affirm the District Court's probable cause ruling
on that basis.  <u>See</u> <u>Ackies</u>, 918 F.3d at 197.[1]

### III.

Veloz's next set of challenges also relies on what he
claims are deficiencies in the search warrant application.  Here,
however, Veloz does not contend that the deficiencies required the

---

[1] In light of our rejection of Veloz's challenge to the search
of his apartment, his challenge to the subsequent searches of his
electronic devices, made pursuant to a new warrant that relied in
part on information gleaned from the apartment search, lacks merit.
Veloz does separately argue that this evidence should be suppressed
because there was a "permanent and endless government search" for
over eighteen months.  Veloz fails to explain, however, why the
delay in retuning the search warrant requires suppression of the
evidence.  This argument is thus waived for lack of adequate
development.  <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st
Cir. 1990) ("[W]e see no reason to abandon the settled appellate
rule that issues adverted to in a perfunctory manner, unaccompanied
by some effort at developed argumentation, are deemed waived.").

suppression of the evidence at issue.  Rather, he contends that

due to what he describes as "omissions and misstatement[s] in the

search warrant affidavit," the District Court erred in refusing

his pretrial motion to hold a hearing pursuant to <u>Franks</u> v.

<u>Delaware</u>, 438 U.S. 154 (1978).  Thus, he contends, the conviction

must be vacated for this reason.

A <u>Franks</u> hearing affords a defendant an opportunity to

show, "by a preponderance of the evidence," that the warrant

application "contains false statements or omissions, made

intentionally or with reckless disregard for the truth, and that

a finding of probable cause would not have been made without those

false statements or omissions." <u>United States</u> v. <u>Arias</u>, 848 F.3d

504, 510-11 (1st Cir. 2017).  To be entitled to a <u>Franks</u> hearing,

the defendant must first make:

> a "substantial preliminary showing" of the
> same two requirements that he must meet at the
> hearing — that "a false statement or omission
> in the affidavit was made knowingly and
> intentionally or with reckless disregard for
> the truth" and that the false statement or
> omission was "necessary to the finding of
> probable cause."

<u>Id.</u> at 511 (quoting <u>United States</u> v. <u>McLellan</u>, 792 F.3d 200, 208

(1st Cir. 2015)).

Veloz contends that the District Court erred in denying

his motion for a <u>Franks</u> hearing because he had made the required

substantial preliminary showing that SA Orlando knew and omitted

key facts from his affidavit about Maldonado's criminal history, previous addiction to heroin, bipolar disorder diagnosis, and some false statements that Maldonado made regarding the kidnappings. Because this challenge is preserved, we review the District Court's factual determinations in denying a motion for a Franks hearing for clear error, and its determination of whether the defendant has made a substantial preliminary showing that the omitted information was material to the finding of probable cause de novo, see id.

Here, because the information in the warrant application that supported a finding that the confidential informant's tip was reliable was so substantial, the omitted information that Veloz points to was not material to "the probable cause calculus." United States v. Stewart, 337 F.3d 103, 106 (1st Cir. 2003). That is especially so because "magistrate judges . . . often know, even without an explicit discussion of criminal history, that many confidential informants 'suffer from generally unsavory character' and may only be assisting police to avoid prosecution for their own crimes." United States v. Avery, 295 F.3d 1158, 1168 (10th Cir. 2002) (quoting United States v. Novaton, 271 F.3d 968, 985 (11th Cir. 2001)).

We also are unpersuaded by Veloz's separate challenge to the District Court's denial of a Franks hearing based on what he contends was SA Orlando's false statement in his affidavit that

the confidential informant "picked Danny Veloz out of a photo binder on July 24, 2012." According to Veloz, his picture was not included in a photo array until August 2, 2012, and Veloz contends that the statement about when his photo was picked out of the binder was a "critical fact relied on by the magistrate judge in finding probable cause . . . as it was a critical detail offered to confirm the informant's knowledge of Veloz[.]"

Veloz first made the argument that he was entitled to a Franks hearing, however, in a motion for reconsideration. Thus, Veloz preserved only his challenge to the denial of that motion. Our review of the denial of such a motion is only for abuse of discretion, see United States v. Fanfan, 558 F.3d 105, 106-07 (1st Cir. 2009), and Veloz makes no argument that the District Court abused its discretion in denying that motion. Nor do we see how he could, given that he was not presenting new evidence in that motion, see United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009), as, prior to Veloz's motion for reconsideration on November 3, 2016, the District Court had already laid out the accurate version of events in its June 4, 2015, decision to deny a Franks hearing.

Insofar as Veloz means to press this argument as a basis for challenging the District Court's original decision to deny his motion for a Franks hearing, we may only review it for plain error. See United States v. Tanco-Pizarro, 892 F.3d 472, 479 (1st Cir.)

- 10 -

("[A]rguments unveiled for the first time in a reconsideration motion are not preserved for appeal."), <u>cert. denied</u>, 139 S. Ct. 354 (2018). But, given the other information in the warrant application, this one representation, even if Veloz could show that SA Orlando knew that it was false, is not of a kind that could make plain that Veloz had made the requisite preliminary showing that the statement was material to a finding of probable cause.

We come, then, to Veloz's contention that the District Court erred in denying his motion for a <u>Franks</u> hearing because the affidavit from SA Orlando failed to reveal that the confidential informant to whom it referred was, in fact, Maldonado. As Veloz puts it, the application failed to "identify Maldonado . . . , instead referring to him as 'CI-1,' and describ[ing] him as a 'confidential informant working with the FBI's North Shore Gang Task Force.'"

The government does not dispute that Maldonado was the confidential informant or that the warrant application failed to disclose that fact. We do not see, though, how this omission could be thought to undermine the basis for finding probable cause. As we have explained, the warrant application provides ample support for finding the informant's tip to be reliable whether or not the informant was involved in the conspiracy. In fact, the inclusion of the fact that Maldonado was the informant would appear to provide additional support for finding the tip reliable, given

that it would provide a basis for finding that the informant was
relaying firsthand knowledge.

In any event, our review of this contention is only for
plain error, because Veloz did not press this ground for requesting
a Franks hearing below. Yet, Veloz "fails to even attempt to
explain how the plain error standard has been satisfied." United
States v. Severino-Pacheco, 911 F.3d 14, 20 (1st Cir. 2018); see
also United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016)
("[Appellant] has waived these challenges because he has not even
attempted to meet his four-part burden for forfeited claims.").

## IV.

The next pretrial ruling that Veloz challenges relates
to the District Court's grant of the government's motion to strike
Special Agent Jeffrey Rolands ("SA Rolands") from his witness list.
In his initial opposition to the government's motion, Veloz argued
to the District Court that he did not need to provide any
justification for including the persons on his witness list that
he did, and that, in the alternative, every witness on his list
should be allowed to appear because they could "offer[] evidence
regarding . . . the flaws in the investigation and the deficiencies
in the securing of evidence." The District Court nevertheless
granted the government's motion to strike, stating that it was
necessary to "protect the jury from testimony that is irrelevant,
cumulative, or confusing" and because SA Rolands had "been

transferred to Washington DC"  In a motion for reconsideration, Veloz contended that the decision to strike SA Rolands interfered with his ability to present his defense, as he intended to call SA Rolands in order to cast doubt on the integrity of the government's investigation.

The parties dispute whether Veloz adequately preserved his challenge to the District Court's initial decision to grant the government's motion.  But, we need not resolve that dispute because Veloz's challenge, even if preserved as to the District Court's initial decision, still fails.

Veloz bases his challenge on his federal constitutional right, as a matter of procedural due process, to call witnesses in his defense.  See Washington v. Texas, 388 U.S. 14, 19 (1967).  To show that this right has been violated, however, Veloz must demonstrate that the District Court abused its discretion in excluding SA Rolands from his list of witnesses.  See United States v. Occhiuto, 784 F.3d 862, 867 (1st Cir. 2015) (reviewing the defendant's constitutional challenge regarding the denial of his request to call a particular witness for "abuse of discretion").  Yet, under Washington, it is not an abuse of discretion for a district court to bar a witness -- as the District Court barred the witness here -- from testifying due to the cumulative nature of the testimony that he would provide.  See United States v. Scheffer, 523 U.S. 303, 308 (1998) ("A defendant's right to present

relevant evidence is not unlimited, but rather is subject to reasonable restrictions."); United States v. Sabean, 885 F.3d 27, 40 (1st Cir. 2018) ("Trial courts enjoy 'considerable latitude' to exclude evidence that is 'admittedly relevant' but also 'cumulative.'" (quoting Hamling v. United States, 418 U.S. 87, 127 (1974))). As Veloz does not explain what SA Rolands' testimony would have provided that would render the District Court's determination that it was cumulative of other evidence in the record an abuse of discretion, we reject this contention.

## V.

We turn, then, to Veloz's contention that the District Court reversibly erred by admitting into evidence a transcript of a recording of statements by Gadiel Romero, one of Veloz's co-conspirators, which purported to confirm Veloz's role in the kidnapping scheme. The statements set forth in the transcript were made during a conversation that Romero had with Maldonado while both men were in prison and that Maldonado had secretly recorded with equipment the government had provided to him.

On September 29, 2016, the government filed a motion in limine to admit, pursuant to Federal Rule of Evidence 804(b)(3), a transcript of the statements that Romero made during this recorded conversation, notwithstanding that they otherwise would have been inadmissible as hearsay. Federal Rule of Evidence 804(b)(3) allows for the admission of hearsay statements that:

- 14 -

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

The District Court granted the government's motion on October 28, 2016. Veloz then moved for the District Court to reconsider that ruling. In response, the government offered to admit a revised transcript that contained only certain excerpts from the conversation between Romero and Maldonado. Veloz objected to the admission into evidence of the revised transcript. The District Court overruled the objection. Veloz now argues on appeal that the District Court erred in permitting the revised transcript to be admitted into evidence.[2]

---

[2] "Typically, litigants offer recordings as evidence and use transcripts as interpretive aids for the jurors' benefit. The recordings control in the event that they differ from the proffered transcripts." United States v. Kifwa, 868 F.3d 55, 60 (1st Cir. 2017) (internal citation omitted). However, when confronted with a conversation in a foreign language, such as the one between Romero and Maldonado, "the parties may agree to forgo having jurors listen to foreign-language recordings that they do not understand," and instead admit into evidence "transcripts containing translations of such recordings . . . as long as they are reliable and properly authenticated." Id. Neither Veloz nor

Veloz first contends that, wholly apart from whether the statements at issue are admissible via the revised transcript pursuant to Rule 804(b)(3), their admission violated the Confrontation Clause of the Sixth Amendment under Bruton v. United States, 391 U.S. 123 (1968) and Lilly v. Virginia, 527 U.S. 116, 139 (1999). Our review of a preserved Confrontation Clause challenge is de novo. See United States v. Phoeun Lang, 672 F.3d 17, 21 (1st Cir. 2012).

In considering Confrontation Clause challenges, "[t]he threshold question in every case is whether the challenged statement is testimonial. If it is not, the Confrontation Clause 'has no application.'" United States v. Figueroa-Cartagena, 612 F.3d 69, 85 (1st Cir. 2010) (quoting Whorton v. Bockting, 549 U.S. 406, 420 (2007)). Because Romero's statements set forth in the revised transcript were not testimonial, Veloz's Confrontation Clause challenge necessarily founders -- even under the de novo standard of review -- on that threshold question. See Davis v. Washington, 547 U.S. 813, 825 (2006) (noting that "statements made unwittingly to a Government informant" are "clearly nontestimonial" (citing Bourjaily v. United States, 483 U.S. 171, 181-84 (1987))).

_____

the government appears to have objected to the use of the transcript.

Veloz next contends that, contrary to the District Court's ruling, the exception to the hearsay bar that is set forth in Federal Rule of Evidence 804(b)(3) does not apply to the statements at issue. To make that case, he asserts that some of the statements that Romero made during the recorded conversation were made to "minimize [Romero's] involvement in the conspiracy" and thus were not made against his penal interest. Veloz also points to certain other statements that Romero made during the recorded conversation that he contends a jury could have interpreted to be self-exculpatory, as the statements suggested that Romero believed that "no one else placed him at the scene of the kidnapping" and that "some of the co-defendants [did not] know him."

We review preserved challenges to evidentiary rulings under the Federal Rules of Evidence for abuse of discretion, see Ackies, 918 F.3d at 205, and the government concedes that this standard applies here, even though Veloz first objected to the revised transcript's admission in a motion for reconsideration, see Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008) ("Where a trial court chooses to overlook the belated nature of a filing and adjudicate the tardy claim or defense on the merits, that claim or defense may be deemed preserved for purposes of appellate review."). Even under the abuse of discretion standard of review, however, the challenge fails for a simple reason:  the

government did not include in the revised transcript of the recording that was admitted into evidence the statements that Veloz identifies as the ones that failed to fall within the Rule 804(b)(3) exception. See United States v. Barone, 114 F.3d 1284, 1295 (1st Cir. 1997) (noting that the Rule 804(b)(3) inquiry narrowly focuses on whether a specific remark could be deemed self-inculpatory, making exclusion only appropriate, "in light of all the surrounding circumstances," for those particular statements that are "collateral," "non-self-inculpatory statements" (quoting Williamson v. United States, 512 U.S. 594, 600, 604 (1994))).

Relatedly, Veloz contends that the government failed to demonstrate, as Federal Rule of Evidence 804(b)(3)(B) requires, that there were "corroborating circumstances" with respect to the statements from Romero that were included in the revised transcript. For this exception to the bar on the admission of hearsay to apply, however, there need only be "evidence that clearly indicates that the statements are worthy of belief, based upon the circumstances in which the statements were made." Id. at 1300. Thus, there is no merit to this challenge because Veloz fails to explain why the statements made here, which were to a "fellow inmate," are not of that sort, see United States v. Pelletier, 666 F.3d 1, 8 (1st Cir. 2011).

Finally, Veloz argues that the District Court erred in failing to exercise its supervisory powers to prevent Romero's statements from being admitted into evidence via the revised transcript. He contends that the court order that allowed Maldonado to use the government's equipment to record his conversation with Romero permitted him to do so only if Maldonado avoided raising the subject of the kidnapping conspiracy. Veloz then contends that the transcript of the recorded conversation reveals -- in his view, contrary to the dictates of the court order -- that Maldonado brought up that topic and that Romero made statements about Veloz's role in the conspiracy only at that point in the conversation. Accordingly, he contends that the District Court was required to exclude the statements at issue as a means of enforcing the court order.

We review preserved challenges to the failure to exercise supervisory powers for abuse of discretion. See United States v. Black, 733 F.3d 294, 301 (9th Cir. 2013) ("We review for abuse of discretion the district court's decision not to use its supervisory powers to dismiss an indictment."). The draft transcript of the conversation does show that Maldonado brought up the kidnapping scheme to Romero. But, the court order that permitted Maldonado to record his conversation with Romero merely required the government to instruct Maldonado not to raise that topic. Because Veloz does not dispute that the government did so

instruct Maldonado, we see no basis for ruling that, to enforce the government's compliance with the court order, the District Court was obliged to exercise its supervisory powers to exclude the transcript insofar as it contained the statements from Romero that Veloz finds objectionable. See United States v. Jennings, 960 F.2d 1488, 1491 (9th Cir. 1992) ("Absent a violation of a recognized right under the Constitution, a statute, or a procedural rule, a district court is not entitled to exclude evidence as a sanction against government practices disapproved of by the court."); United States v. Osorio, 929 F.2d 753, 763 (1st Cir. 1991) ("Without a nexus between improper prosecutorial practice and prejudice to the defendant, misconduct must be characterized as harmless error, and thus beyond the scope of redress under supervisory powers by dismissal or reversal.").

Independent of the challenges that he brings that focus on the fact that the revised transcript included Romero's statements, Veloz also contests the admission of the revised transcript on the ground that it included a statement by Maldonado that conveyed certain information that he had learned from investigators. The contention seems to be that this statement from Maldonado was hearsay and thus was inadmissible for that reason. But, Maldonado's statement was admitted into evidence solely to identify the statement to which Romero was responding in making a statement of his own that the revised transcript included

and not for its truth.  Thus, the District Court did not err in permitting the admission of that statement via the revised transcript.  <u>See</u> <u>United States</u> v. <u>Walter</u>, 434 F.3d 30, 34 (1st Cir. 2006).[3]

**VI.**

We turn now to Veloz's contention that the District Court reversibly erred at trial because it permitted the admission of certain evidence and testimony that concerned U.S. Fleet Tracking's GPS data.  U.S. Fleet Tracking produces the GPS devices that Veloz allegedly used to track his victims.

Veloz first argues that the District Court erred in permitting this data to be admitted under the hearsay exception for business records that is set forth in Federal Rule of Evidence 803(6).  Rule 803(6) states that:

> A record of an act, event, condition, opinion, or diagnosis [can be admitted into evidence] if:
>     (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

---

[3] Maldonado's statement that was admitted into evidence reads as follows:

> 'Cause you, when they told me is that these n****s, right, they had them under surveillance already for a long time, that these n****s been doing burning and f***ing stabbing, and f***ing n****rs up for the longest time, right?  You think Cano and Danny will say:  "Yo, we are hot," you know what I mean?

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Veloz trains his focus initially on the requirements that are set forth in subsections (A)-(C). Veloz contends that, because the GPS data that was admitted into evidence was prepared in anticipation of litigation, these requirements were not met. But, while the government's trial exhibit that set forth the GPS data was so prepared, the government showed that U.S. Fleet Tracking created and stored the GPS data itself contemporaneously with Veloz's conduct and thus not in preparation for the litigation. We thus reject Veloz's first ground for claiming that the business records exception did not encompass the data in question.

Veloz next focuses on subsection (D). He argues that the government failed to provide a "qualified witness" to testify that the relevant conditions had been met for admitting the GPS data under the business records exception. Veloz focuses solely

on the testimony of Task Force Officer Jason Sutherland. Veloz contends that Sutherland was not qualified within the meaning of the provision in part because he could not explain some discrepancies in the GPS data. But, the government also offered the testimony of Bill Eichhorn, an executive at U.S. Fleet Tracking. Eichhorn was clearly a qualified witness whose testimony sufficed to show the conditions in Rule 803(6) were met here. Nor does Veloz argue otherwise. Thus, this challenge fails, too.

## VII.

We move on to Veloz's challenge to the District Court's decision at trial to admit certain testimony offered by Eichhorn, the U.S. Fleet Tracking representative, and Elisabeth Lenehan, an FBI staff operations specialist. Here, too, we find no merit to Veloz's challenges.

Veloz contends that the District Court erred by permitting Eichhorn to recount hearsay when he "introduced the purchase orders and information from other companies" than U.S. Fleet Tracking, which we understand to be a reference to certain records relating to AT&T, Brickhouse Security, and FedEx to which Eichhorn had referred in his testimony. Our review is for abuse of discretion. See Ackies, 918 F.3d at 205.

The problem with this contention is that it rests upon a mistaken understanding of the facts. Our review of the record shows that the documents to which Eichhorn referred in his

testimony were emails and records pulled from U.S. Fleet Tracking's own recordkeeping system. To the extent that the record can be read to the contrary, moreover, any error would have been harmless, given the substantial independent evidence of Veloz's guilt. Nor does Veloz develop any argument to the contrary.

Veloz's challenges with respect to Lenehan's testimony also lack merit. Veloz first contends that the District Court reversibly erred by permitting her to testify to the contents of her conversation with T-Mobile regarding a phone seized from Veloz's apartment and that one of the co-conspirators had listed Maldonado in his phone as "H."

But, Veloz similarly fails to develop any argument about why the admission of the T-Mobile testimony, even if improper, was not harmless, given the evidence as a whole. See Zannino, 895 F.2d at 17. And, the record indicates that the testimony about "H" was harmless, as a co-conspirator had already appeared at trial and testified to the same effect. See United States v. Valdivia, 680 F.3d 33, 46 (1st Cir. 2012) (finding the admission of hearsay harmless when it "is cumulative of other evidence in the record"). Nor does Veloz explain how Lenehan's testimony about "H" was prejudicial.

Veloz next claims that the District Court erred by allowing Lenehan to offer improper opinion testimony on matters that included "what nicknames and letters meant. . . . [and]

extraction reports she had not written." Veloz asserts that this testimony enabled Lenehan "to link the alleged conspirators . . . with her speculative interpretations" of the contact list and phone numbers on a co-conspirator's phone. But, as Veloz fails to identify the specific statements that he contends that Lenehan was not qualified to interpret, the challenge is waived for lack of development. See id.

## VIII.

We now turn to a challenge that Veloz brings to events that occurred on the fifth day of the trial, when the District Court conducted the voir dire of Eichhorn, outside the presence of the jury, to determine his qualifications as an expert witness. The record shows the following: Veloz's counsel asked the District Court whether Veloz was available to attend the voir dire. The District Court responded both that it did not know and that it was not necessary to have Veloz present for that portion of the proceedings. Veloz's counsel did not then further press the point, and Veloz was not present for the voir dire.

On appeal, Veloz contends that he was excluded from the voir dire and that this exclusion violated his rights under the Due Process Clause and the Confrontation Clause to be present "at all critical stages of the trial." Rushen v. Spain, 464 U.S. 114,

117 (1983) (per curiam).[4]  The government responds that, because
Veloz did not press the point below, he must satisfy the plain
error standard, see United States v. Karmue, 841 F.3d 24, 27 (1st
Cir. 2016), which is a point that Veloz disputes.

Insofar as Veloz must satisfy the demanding plain error
standard, his challenge cannot succeed because he makes no attempt
to show how any error was plain, see Severino-Pacheco, 911 F.3d at
20.  But, even if we were to review his challenge de novo, see
Karmue, 841 F.3d at 26, we do not see how it has merit.

The Due Process Clause "requires that a defendant be
allowed to be present 'to the extent that a fair and just hearing
would be thwarted by his absence,'" Kentucky v. Stincer, 482 U.S.
730, 745 (1987) (quoting Snyder v. Massachusetts, 291 U.S. 97, 108
(1934)).  Veloz appears to have been in no position to assist his
counsel with respect to any factual disputes regarding Eichhorn's
qualifications.  Nor does Veloz offer any examples of the
objections that he would have made or assistance that he would

---

[4] Though Veloz fails to cite it in his brief, we note that
Federal Rule of Criminal Procedure 43(a) codifies this Due Process
right.  See United States v. Iverson, 897 F.3d 450, 466 (2d Cir.
2018).  Rule 43 provides, in pertinent part, that "the defendant
must be present at: (1) the initial appearance, the initial
arraignment, and the plea; (2) every trial stage, including jury
impanelment and the return of the verdict; and (3) sentencing."
The rule also states that a defendant need not be present when
"[t]he proceeding involves only a conference or hearing on a
question of law."  Fed. R. Crim. P. 43(b)(3).

have offered had he been present at the voir dire.  Thus, Veloz

fails to show how his presence at Eichhorn's voir dire would have

been necessary to ensure that it was a fair and just proceeding.

See id. at 747 (ruling against a defendant, in part, because he

gave "no indication that his presence at the competency hearing

. . . would have been useful in ensuring a more reliable

determination").[5]

## IX.

That brings us to the suite of challenges that Veloz

brings to certain comments that the prosecutor made during his

closing argument and his rebuttal.  Veloz chiefly contends, as he

did below, that the prosecutor made the improper comments by:  (1)

engaging in "burden shifting" during rebuttal; (2) referring to

Romero; (3) characterizing "the U.S. Fleet [data and records] as

business records"; (4) characterizing "Romero as the pillar of the

case"; (5) stating that Veloz's counsel "[went] after Eichhorn";

and (6) claiming that Romero did not know he was being recorded.

We may "vacate a conviction only if the [prosecutor's

improper] remarks 'so poisoned the well that the trial's outcome

was likely affected.'"  United States v. French, 904 F.3d 111, 124

_____

[5] Nor do we see any Confrontation Clause violation -- insofar
as Veloz means to contend that there was one -- resulting from
Veloz's absence from the voir dire.  Veloz had an "opportunity for
full and effective cross-examination" of Eichhorn with regard to
his background during the trial.  Stincer, 482 U.S. at 744.

(1st Cir. 2018) (quoting United States v. Kasenge, 660 F.3d 537, 542 (1st Cir. 2011)).  "In assessing this question, we consider the severity of the conduct and whether it was deliberate, the context, the presence of curative instructions and their likely effect, and the strength of the prosecution's case."  Id.

We review preserved challenges to the propriety of a prosecutor's remarks de novo.  See United States v. Zarauskas, 814 F.3d 509, 514 (1st Cir. 2016).  We may assume that Veloz's objections to each of these statements were timely made because, even on that assumption, there is no basis for finding that the District Court reversibly erred in overruling them.

We have already explained why Veloz's challenges to the admission of Romero's statements via the revised transcript and to the U.S. Fleet Tracking data lack merit.  In light of that same reasoning, there was nothing improper in the prosecutor referring to Romero's statements in the revised transcript, given that the statements were properly admitted, or to the GPS data being business records, given that they were properly so deemed under Federal Rule of Evidence 803(6).  Nor do we see how, given the substantial evidence against Veloz, these statements by the prosecutor were so prejudicial as to affect the trial's outcome. That is especially so given that the District Court instructed the jury, both before and after closing arguments began, that "[w]hat the lawyers say, what I say as far as any factual matter in the

case goes, does not matter. You, as the jury, are the sole judges of the facts." In fact, Veloz fails to develop anything more than a cursory argument that the comments just described were so prejudicial as to warrant overturning the conviction.

There remains to address only the other comments by the prosecutor that Veloz identifies as problematic. But, as to these comments, too, Veloz fails to demonstrate how any of them caused the requisite prejudice. Thus, his challenges based on those comments are meritless as well, even if we were to assume that any of these comments were somehow improper.[6]

## X.

Next up is Veloz's penultimate challenge. It is to the District Court's instruction to the jury, just before it began its deliberations, that Maldonado's "recording was obviously made without Mr. Romero's knowledge." Veloz argues that the District Court's instruction "decided an issue of fact for the jury, and clearly injected the court's opinion into evaluating the evidence." In other words, Veloz contends, the instruction "eliminated the possibility that the jurors could reject the transcript outright as untrustworthy."

---

[6] The same is true as to Veloz's challenges to yet other comments that the prosecutor made that Veloz, for the first time on appeal, now contends were also improper.

- 29 -

The government points out that, although Veloz made an objection to a draft form of the instruction in the morning on the day that jury was charged, he failed to renew that objection after the jury was charged. Veloz responds that he did not renew his objection at that time because the District Court stated that it would consider the objections from that morning preserved. But, Federal Rule of Criminal Procedure 30, which governs objections to jury instructions, "require[s] the appellant to renew his objection after the jury has been charged when the court has given the parties that opportunity," United States v. Henry, 848 F.3d 1, 13 (1st Cir. 2017), and we have held that the fact that a district court made a statement "after the charge that objections made prior to it will be saved does not absolve the attorney from following the strictures of the rule," id. (citation omitted).

Even if we were to treat the challenge as preserved, it still would fail. The District Court repeatedly advised the jury that it was the "sole judge[] of the facts." Moreover, Veloz does not dispute that Romero was unaware that Maldonado was recording his conversation with him, and the record provides no basis from which a reasonable juror could conclude otherwise. Thus, we fail to see how the District Court's statement in the instruction was sufficiently prejudicial to constitute reversible error.

**XI.**

Veloz's final ground for challenging his conviction concerns a ruling that the District Court made after the jury rendered its verdict that Veloz was guilty of the charged offense. At that time, the District Court denied Veloz's motion pursuant to Federal Rule of Criminal Procedure 33 for a new trial based on his allegation that "evidence was tampered with, thereby denying [him] a fair trial."[7]  We review a "denial of a Rule 33 motion for manifest abuse of discretion with the respect due to the presider's sense of the ebb and flow of the recently concluded trial." United States v. Tull-Abreu, 921 F.3d 294, 301-02 (1st Cir.) (internal citation and quotation marks omitted) (alterations omitted), cert. denied, 140 S. Ct. 424 (2019).  But, a district court "must exercise that discretion sparingly and in the most extraordinary circumstances, and only in order to avert a perceived miscarriage of justice.  In short, the ultimate test for granting a new trial pursuant to [the Rule] is whether letting a guilty verdict stand would be a manifest injustice."  United States v. Gramins, 939 F.3d 429, 444 (2d Cir. 2019) (internal citations and quotation marks omitted).

---

[7] Rule 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."

Veloz's arguments concerning the District Court's asserted error in denying his Rule 33 motion are not easy to follow. As best we can tell, Veloz points to five instances of alleged mishandling or tampering with evidence that he contends were set forth in his Rule 33 motion: (1) someone tampered with data on one of the laptops seized from Luis Reynoso's, a co-conspirator, apartment; (2) a laptop seized from Veloz's apartment showed that Veloz accessed a photo on July 23, 2012, that did not come into existence until July 24, 2012; (3) GPS data on Jose Guzman's, a co-conspirator, phone was "altered between November 5 and November 15, 2012"; (4) two phones taken from Jose Matos, a co-conspirator, were lost or destroyed during the investigation; and (5) SA Orlando "returned crucial evidence to a cooperator's wife without copying the materials first."

Veloz appears to be arguing that the evidence offered against him was so unreliable, on account of these alleged problems with the way evidence against him was handled, that there was insufficient evidence upon which to convict him of the charged offense. The District Court found, however, that Veloz's counsel laid out each of these asserted problems with the way that the government had handled the investigation to the jury and that the jury, fully cognizant of those alleged problems, nonetheless found Veloz guilty. Veloz does not challenge the finding that the contentions that he raises in his Rule 33 motion were ones that

the jury was given a full opportunity to consider. Nor does he succeed in demonstrating that the contentions are such as to compel a finding that, in consequence of them, the evidence against him did not suffice to support the conviction, let alone that the District Court manifestly abused its discretion in finding against him on that point. As a result, this challenge to the denial of his motion for a new trial fails. See United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010)(stating that relief under Rule 33 for a sufficiency challenge may only be granted "where the evidence preponderates heavily against the verdict" (quoting United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001)).

### XII.

The conviction is **affirmed**.